**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

              v.

COLIN MONTAGUE,

              Defendant.



**REPORT AND**
**RECCOMMENDATION**
14-CR-6136-FPG-JWF

### Preliminary Statement

On December 9, 2014, the Federal Grand Jury returned a Second Superseding Indictment (Docket # 55) in this matter, charging defendant with various offenses relating to narcotics possession and distribution, money launderi+ng and illegal possession of firearms. The Indictment also contains forfeiture allegations. Pursuant to a scheduling order issued by the undersigned, defense counsel filed omnibus motions relating to the specific charges against defendant and the government responded (Docket ## 149, 164). Oral argument was heard on August 24, 2015. See Transcript of Proceedings of August 24, 2015 (Docket # 196).

The following is my Report and Recommendation as to defendant's motions to suppress on which I reserved decision.

## Report and Recommendation

I. Wiretap Evidence: The defendant has made a motion to suppress wiretap evidence. See Docket # 149 at ¶ 159-17. Relatedly, Montague also moves for a "Franks Hearing" because of allegedly "perjurious wiretap applications." Id. at ¶ 218-22. Both motions concern evidence obtained pursuant to eavesdropping warrants allowing electronic surveillance of several phones allegedly used by Montague.

The wiretap orders at issue here were based on four sworn affidavits submitted to Monroe County Court Judge Victoria M. Argento (hereinafter "Judge Argento") by Sabbatino Smith, a Special Agent with the federal Drug Enforcement Administration (DEA) (hereinafter "Agent Smith" or "Smith"). On March 3, 2014, and based on Agent Smith's supporting affidavit, Judge Argento issued an eavesdropping warrant authorizing the interception of the target number 585-694-5707. Judge Argento signed extension orders for this phone on April 1, 2014, April 30, 2014, and May 30, 2014. All of the extension orders were based on supporting affidavits from Agent Smith. Montague makes several arguments in support of his claim that Agent Smith's affidavits were legally insufficient to demonstrate probable cause. However, for purposes of this Report and Recommendation, it is sufficient to group his arguments into three categories – (1) Agent Smith had no basis to opine that the voice he heard on the phone was in

2

fact Montague; (2) Agent Smith's opinion interpreting statements made on the calls as "drug jargon" was erroneous; and (3) the applications were "not based on any facts connecting Montague with the target number 585-694-5707." Docket # 149 at ¶ 205.

    1.  <u>Voice Recognition</u>: Montague repeatedly argues that because Agent Smith's affidavit does not set forth "what training or experience" Smith had in voice recognition, he was unqualified to opine that the voice he heard was Montague's and therefore his "sworn statement about his voice comparison was a LIE." <u>See</u> Docket # 149 at ¶ 171 (emphasis in original). Montague cites no cases in support of his argument and I find it to be without merit. "The standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." <u>United States v. Rizzo</u>, 492 F.2d 443, 448 (2d Cir. 1974). Indeed, no special training or experience is needed to identify a voice. Identification of a voice, either firsthand or from a recording, may be authenticated by opinion "based [up]on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). "Lay opinion on this issue is permissible so long as the witness testifying has the requisite familiarity with the speaker." <u>United States v. Thomas</u>, 586 F.2d 123, 133 (9th Cir. 1978). "Even identifications based on 'minimal exposure' are

3

admissible, and it is the province of the jury whether to credit or not credit such identifications." United States v. Simons, 129 F.3d 114 (2d Cir. 1997). Thus, it was perfectly permissible for Judge Argento to consider Agent Smith's voice identification in deciding whether the evidence within the application met the standard for issuing the eavesdropping warrants.

2. Drug Jargon: In his affidavits[1] supporting the warrant, Agent Smith told Judge Argento that he had been a DEA Agent since 2009 and had received training in the areas of drug identification, drug distribution methods, money laundering, and drug enforcement techniques. He also averred that he had experience in narcotics investigations involving eavesdropping warrants and undercover operations. As a result of his training and experience, Smith stated that he was "familiar with the jargon of narcotics and the way narcotics and other illicit drug users and sellers seek to disguise activity relating to drug trafficking." See, e.g., Smith's Affidavits in Support of the Application for an Ex Parte Eavesdropping Warrant associated with Cellular Telephone Number (585) 694-5707. Montague claims that Smith's familiarity with drug jargon is nothing more than a

---

[1] Although both counsel referred to them in their papers, neither party attached the state eavesdropping warrants to their motion papers. The Court obtained copies of Agent Smith's affidavits from the Government to review in connection with this Report and Recommendation. The four affidavits contain investigatory information that may not be public information. Accordingly, I am directing that they be filed under seal so that they are available for review should objections to this Report and Recommendation be filed.

4

"magic formula" permitting him to interpret words as indicative of drug trafficking without basis. See Docket # 149 at ¶ 160. This Court disagrees. "Given the attempts of drug dealers to disguise the content of their discussions as legitimate subject matters, courts may allow witnesses to 'decipher' the codes drug dealers use and testify to the true meaning of the conversations." United States v. Garcia, 291 F.3d 127, 139 (2d Cir. 2002). See also United States v. Thomas, 414 F. App'x 537, 538 (4th Cir. 2011)(in making probable cause determination "judge was free to accept (or reject) the detectives' opinion" that words spoken in a court ordered wiretap "were code words for narcotics distribution"); United States v. Dukagjini, 326 F.3d 45, 52 (2d Cir. 2003)("[W]e have recognized that drug dealers often camouflage their discussions and that expert testimony explaining the meanings of code words may 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") Based on the foregoing, it was not improper for Judge Argento to consider Agent Smith's interpretation of drug jargon in making her probable cause determination.

3. <u>Connecting Montague to the Phones Subject to Eavesdropping</u>: In defense counsel's motion papers he complains several times that the warrant applications lack probable cause because Agent Smith never explained how the targeted phones were being used by or associated with Montague. See Docket #149 at

¶¶ 177, 179, 187, 191, 205, and 215. I have reviewed the supporting affidavits and disagree with the defendant. Even putting aside Agent Smith's representation that he was able to recognize Montague's voice on various intercepted calls, Smith's affidavits still provided Judge Argento with substantial detail on other corroborating evidence, including surveilled activities, other phone calls, meetings, travel, and the carrying of suspicious items, all of which were consistent with the substance of the conversations intercepted. Such conduct and observations corroborate the connection of the defendant to the telephones and the use of the telephones to further drug trafficking activities.

Based on the foregoing, it is my Report and Recommendation that the defendant's motion to suppress evidence obtained from the eavesdropping warrants be **denied**. For the same reasons, it is my Report and Recommendation that the defendant's motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) be **denied**. "To be entitled to a Franks hearing, a defendant must make a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." United States v. Salameh, 152

6

F.3d 88, 113 (2d Cir. 1998)(internal quotation and citation omitted). Clearly, neither showing has been made here.

II. <u>Searches of Montague's Residence</u>: Montague has moved to suppress "tangible evidence" obtained from the search of his residence located at 152 Bright Autumn Lane, Greece, New York. Montague has an expectation of privacy in the premises. <u>See</u> Docket # 187.

The defendant's arguments in support of suppression are austere, providing little specificity and no case authority in support of his claims. <u>See</u> Docket # 149 at ¶ 240-50. Indeed, Montague's motion papers appear to refer to a single search warrant, although no date is specified. Montague claims that the "Magistrate signed a warrant that improperly authorized the law enforcement to rummage through defendant's home" and that the probable cause in the warrant application was based on "stale" information. <u>Id.</u> The government's response is equally obtuse. The government's response describes Montague's motion as one challenging "the search warrant authorizing the search of 152 Bright Autumn Lane." <u>See</u> Docket # 164 at 22. In responding to the motion, the government repeatedly refers to the June 26 2014 warrant as the "search warrant in question." <u>Id.</u> at 23-24. Yet, when making a good faith argument, the government refers to a single "search warrant" in its heading but references "the search warrants in question" in the body of its argument. <u>Id.</u> at

7

24. Thus, neither the defendant nor the government specifically identified a second search warrant in their motion papers.

It was not until the motion hearing when it became apparent that there were two warrants for Montague's residence separated by almost two years. At oral argument, the Court asked defense counsel if he could "detail . . . a little bit more on what your argument is?" See Docket # 196 at 114. Defense counsel described his argument as being based on a lack of probable cause and requested two weeks to supplement his motion papers. No supplementation was ever received. During the motion argument, the Court requested copies of both warrants and they were later provided and reviewed. The first search warrant was signed on August 14, 2012 by Greece Town Judge Charles A. Schiano, Jr., and was based on an affidavit sworn to by Greece Police Officer Shaun A. Moore. The second search was signed on June 26, 2014 by Judge Argento, and was based on an affidavit sworn to by Agent Smith.

Since the government has not made any specific arguments with respect to the 2012 search warrant, the Court will assume that there was nothing seized from this search that the government intends to offer into evidence in its case-in-chief. Therefore, the Court will address Montague's arguments as they relate to the August 26, 2014 search warrant signed by Judge Argento.

8

1.   Probable Cause:   The supporting affidavit of Agent Smith is over fifty (50) pages long and seeks to provide probable cause for the search of twenty-two (22) different locations, twelve (12) individuals and eight (8) vehicles. In his affidavit, Agent Smith details a sophisticated and complex drug trafficking operation headed by Colin Montague. Agent Smith referenced numerous monitored phone calls between and among Montague and his co-defendants which Smith reasonably believed to be in furtherance of large-scale drug trafficking activities. Smith's interpretation of the "drug jargon" and other coded conversations used in the monitored calls were corroborated by surveillance of meetings and movements of Montague and other alleged members of the drug trafficking enterprise.

When measuring the sufficiency of a probable cause finding, it must be remembered that certainty is not required. "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts . . . ." Illinois v. Gates, 462 U.S. 213, 232 (1983). "The standard does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found" in the place to be searched. United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004). "To establish probable cause to search a residence, two factual showings are necessary - first, that a crime was

committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). Based on my review of Agent Smith's affidavit, it was reasonable for Judge Argento to believe that there was a fair probability that evidence of criminal drug trafficking activities would be located at Colin Montague's residence. United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (it is well settled that courts conducting a review of a judge's decision to issue a warrant must pay "great deference" to the issuing judge's determination of probable cause). Moreover, there also exists a fair probability that the current residence of a leader of an active drug trafficking organization will contain evidence of drug trafficking activity. See, e.g., United States v. Fama, 758 F.2d 834, 837-38 (2d Cir. 1985) (suggesting that size of narcotics trafficking scheme may be a factor relevant to probability that contraband will be located at trafficker's residence); United States v. Morgan, 690 F. Supp. 2d 274, 287 (S.D.N.Y. 2010) (probable cause existed for warrant to search defendant's residence where defendant was charged with conspiracy to distribute fifty grams or more of crack cocaine, and where supporting affidavit contained agent's statement that based on his experience drug traffickers often keep records related to trafficking activities in their homes); United States

10

v. Mullen, 451 F. Supp. 2d 509, 543 (W.D.N.Y. 2006) (issuing judge, relying on affiant's experience and training, properly inferred that defendant's "status as a leader of the large-scale and on-going narcotics conspiracy" would support probable cause finding that leader's "residence would yield evidence of narcotics trafficking").

   2.   Staleness: "When making the probable cause determination, a magistrate judge must make a common sense account of all the circumstances, and in doing so determine whether the information in the application is current or has become stale." United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) (internal citation omitted). There are "two critical factors" in determining whether the evidence in a search warrant application is stale: the time elapsed between the evidence and the application, and the type of crime involved. United States v. Ortiz, 143 F.3d 728, 732 (2d Cir. 1998) (citation omitted). Thus, the age of the information must be assessed in light of the nature of the criminal activity suspected. Where ongoing criminal conduct such as a narcotics conspiracy is suspected, "the passage of time between the last described act and the presentation of the application becomes less significant." United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1988) (citation omitted). Indeed, the Second Circuit has instructed that "narcotics conspiracies are the very paradigm of the

11

continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990) (citations omitted). Agent Smith's affidavit provided probable cause to believe that 152 Bright Autumn Lane was the residence of the leader of a complex and active drug conspiracy. The drug-related activity leading up to the warrant application went right up to the time Agent Smith's warrant application was made. Therefore, the search warrant application was not based on stale information. See, e.g., United States v. Clark, No. 05-CR-6041, 2006 WL 3150986, at *3 (W.D.N.Y. Nov. 1, 2006)(no staleness found despite fourteen-day gap between observation of defendant's drug activity and execution of the search warrant); United States v. Mullen, 451 F. Supp. 2d at 531 (sufficient probable cause found despite five-months lapse between interception of incriminating conversation and search warrant execution); United States v. Melissa, No. 05 CR. 107 GEL, 2005 WL 2414550 (S.D.N.Y. Sept. 21, 2005) (two-month delay in seeking warrant in drug trafficking case does not render probable cause stale).

3. General Search: "[G]eneral searches are prevented by the . . . Fourth Amendment requirement that the place to be searched be particularly described." 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012). "[T]he particularity requirement 'makes general searches . . . impossible and

12

prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" United States v. Buck, 813 F.2d 588, 590 (2d Cir. 1987) (quoting Marron v. United States, 275 U.S. 192, 196 (1927)). Thus, "[a] failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." United States v. George, 975 F.2d 72, 76 (2d Cir. 1992).

The search warrant signed by Judge Argento did not authorize a general search. Rather, the language of the warrant limited the executing officers to search for documents, records, photographs and videotapes tending to show the illegal sale and trafficking of cocaine.

> It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."

United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990). Even if broadly worded, "the language of the warrant is to be

13

construed in light of an illustrative list of seizable items." Id. at 844 (citations omitted).

Moreover, simply creating or storing the items described in the warrant in electronic form on computers, cell phones or other digital devices does not transform the warrant as authorizing a general search. It is the warrant's description of the range of items subject to seizure and not the form in which the items are held which is the focus of the particularity requirement. See, e.g., United States v. Miller, No. 13-CR-6036L, 2013 WL 4505458, at *3 (W.D.N.Y. Aug. 16, 2013)(search warrant authorizing the search for and seizure of "photographs" "reasonably encompasses all photographs whether printed and finished or stored in digital format"); United States v. Reed, No. 2:13-CR-29-1, 2013 WL 5503691, at *4-5 (D. Vt. Oct. 2, 2013) (search of cell phones found in a residence was proper where the warrant particularly described the scope of the search as evidence "relating to the purchase, importation, and distribution of controlled substances"). Because the warrant at issue here particularly described the places to be searched and the items to be seized, it did not permit "the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987). For these reasons, it is my Report and Recommendation that Montague's

14

motion to suppress the evidence obtained from the June 26, 2014 search of his residence be **denied**.

### Conclusion

For the reasons set forth above, it is my Report and Recommendation that Colin Montague's motions to suppress be **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: May 20, 2016
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   May 20, 2016
         Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).