UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

              v.

COLIN MONTAGUE,

           Defendant.
───────────────────────────────

REPORT AND
RECOMMENDATION
14-CR-6136-FPG-JWF

FILED FEB 27 2017

## Preliminary Statement[1]

On December 9, 2014, the Federal Grand Jury returned a Second Superseding Indictment (Docket # 55) in this matter, charging Defendant Colin Montague ("defendant" or "Montague") with various offenses relating to possession and distribution, money laundering and illegal possession of firearms. Defendant's retained counsel, John Parrinello of The Parrinello Law Firm, LLP, filed comprehensive omnibus motions relating to the specific charges against defendant. Defense counsel's motion papers were fifty pages in length. See Docket # 149. Thereafter the government responded. See Docket # 164. Oral argument was heard on August 24, 2015, at the conclusion of which I issued an oral Decision and Order on some of the motions and reserved decision on the other motions. See Transcript of Proceedings of August 24, 2015 (Docket # 196).

---

[1] By Order of Hon. Charles J. Siragusa, United States District Judge, dated August 26, 2014, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). See Docket # 4.

1

On January 26, 2016, Chief Judge Geraci issued an Order suspending from federal practice John Parrinello, Montague's retained attorney, for a period of six months. Thereafter, the defendant was represented by attorney Matthew Parrinello, Esq. of the Parrinello Law Firm.

On May 17, 2016, this Court issued a Decision and Order confirming the decisions I made on the record and addressing all remaining discovery issues in the case. See Docket # 253. On May 18, 2016, the defendant requested that the Parrinello Law Firm be terminated from representing him further and asked for the appointment of new counsel. This Court granted the request and appointed Maurice J. Verrillo, Esq. to represent the defendant. See Docket # 254. At the time new counsel was appointed, this Court advised the defendant and Mr. Verrillo that the appointment of new counsel was not intended to re-open all prior proceedings and that absent "exceptional circumstances" the Court would not allow the filing of additional pre-trial motions.

On May 20, 2016, this Court issued a Report and Recommendation, which resolved all of defendant's remaining dispositive motions.[2] See Docket # 257. Six months later, Mr. Verrillo, filed the instant motion to "reargue, reopen and

---

[2] Defendant objected to this Report and Recommendation on November 18, 2016. See Docket # 334. Those objections are now pending before Chief Judge Geraci.

2

reconsider" the Court's May 20, 2016 Report and Recommendation. The motion papers consist of a 75 page affirmation of defense counsel that includes 184 separately numbered paragraphs. See Docket # 332. On the same date, the defendant filed objections (Docket # 334) to this Court's May 20, 2016 Report and Recommendation. The objections (which are only seven pages long) are currently pending before Chief Judge Geraci. In light of the Court's warning to defense counsel that it was not inclined to allow supplemental motions, the Court directed the government to respond to the new motions and address "whether the new motions raise issues that have already been addressed by the Court." Docket # 344. The government filed its response to defendant's second set of motions on December 28, 2016. See Docket # 357.

## Discussion

After he was arrested, Mr. Montague retained The Parrinello Law Firm and John R. Parrinello, Esq. to represent him. Pursuant to a scheduling order that allowed all counsel ample time to review discovery and file appropriate pretrial motions, Mr. Parrinello filed such motions on behalf of Mr. Montague. This Court reviewed, researched, and addressed all of the motions filed by Mr. Parrinello and counsel for the co-defendants. Despite my warning to assigned counsel that, absent exceptional circumstances, I would not be inclined to entertain

3

additional motion practice, new counsel has filed supplemental motions seeking to "reargue, reopen and reconsider" virtually every one of the rulings I rendered in my May 20, 2016 Report and Recommendation. However, even more concerning is the fact that, after reading the 75 pages of supplemental motion papers, this Court cannot discern anything approaching exceptional circumstances that would justify the need for these additional motions.

**A. Court Issued Warrants:** Montague moves to suppress – for the second time – evidence from the following warrants: (1) a wiretap application for 585-694-5707; (2) a wiretap application for 585-368-8713; (3) a search warrant for 152 Bright Autumn Lane signed on August 14, 2012, and (4) a search warrant for 152 Bright Autumn Lane signed on June 26, 2014. Defendant moved to suppress evidence from each of these warrants in his original set of motions, and this Court denied each of those motions in its May 20, 2016 Report and Recommendation. See Docket # 257. The defendant has provided no new facts or arguments that require this Court to revisit its previous decision regarding those warrants and he has already filed objections to my Report and Recommendation. Consequently, these motions are **denied**.

**B. Warrants for Co-Defendants' Cell Phones:** The defendant moves for the first time to suppress evidence obtained as a

result of wiretaps of cell phones used by his co-defendants. For purposes of these motions, the Court assumes that defendant's standing is not challenged here because his voice can be heard on the subject wiretaps. United States v. Burford, 755 F. Supp. 607, 612 (S.D.N.Y. 1991) ("[A]ny defendant who was heard on any wiretap has standing to challenge the procedures employed."). Although these wiretaps could have been challenged earlier, I will address the merits of Montague's arguments.

(a) <u>Availability of Less Intrusive Investigative Means</u>: The defendant argues that these applications do not meet the statutory requisites for wiretaps because the applicant failed to adequately explain why alternative less intrusive investigation techniques were not adequate or sufficient. The law in this area was recently summarized by Magistrate Judge Payson:

> An application for wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). A judge may approve a wiretap application only after determining that such a showing has been made. 18 U.S.C. § 2518(3)(c). This requirement "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). In other words, the government need not "exhaust all conceivable investigative techniques before resorting to electronic surveillance," but must resort to telephonic surveillance only "when it is necessary to assist in

5

law enforcement." United States v. Concepcion, 579 F.3d 214, 218 (2d Cir. 2009); United States v. Funderburk, 492 F. Supp. 2d 223, 242 (W.D.N.Y. 2007) (the "other investigative procedures" requirement is not intended to turn electronic surveillance into a "tool of last resort"). "'Merely because a normal investigative technique is theoretically possible, it does not follow that is likely' to succeed." United States v. Crosby, 2010 WL 4703615, *3 (W.D.N.Y.) (quoting United States v. Torres, 901 F.2d 205, 231-32 (2d Cir. 1990)), report and recommendation adopted, 2010 WL 4703596 (W.D.N.Y. 2010). The wiretap application needs only to inform the issuing court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." United States v. Concepcion, 579 F.3d at 218 (quoting United States v. Diaz, 176 F.3d 52, 111 (2d Cir.), cert. denied, 528 U.S. 875 (1999)).

In narcotics conspiracy investigations, this requirement may be satisfied by "describing how traditional investigative techniques had failed to provide more than a 'limited picture' of [the] narcotics organization." United States v. Valdez, 1991 WL 41590, *2 (S.D.N.Y.) (quoting United States v. Torres, 901 F.2d at 232), aff'd, 952 F.2d 394 (2d Cir. 1991). Moreover, wiretaps are particularly appropriate when "the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987) (internal quotation omitted).

This Court's review of the issuing court's determination is not *de novo*; rather, the reviewing court must determine only whether "the facts set forth in the application were minimally adequate to support the determination that was made." Concepcion, 579 F.3d at 218 (quoting United States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997) (agent's assertion that surveillance had been conducted unsuccessfully on numerous occasions was "minimally adequate"), cert. denied, 524 U.S. 905 (1998)); see also United States v. Miranda, 1993 WL 410507, *2 (S.D.N.Y. 1993) (issuing court's determination concerning sufficiency of normal investigative techniques is entitled to "substantial deference"). The reviewing court must

6

test the application in a "practical and commonsense fashion." Concepcion, 579 F.3d at 218.

United States v. Bailey, No. 15-cr-6082, 2016 WL 6082239, at *10 (W.D.N.Y. Oct. 17, 2016).

Measured against this practical, commonsense and deferential standard, the government's applications for wiretaps used in their investigation of the defendant and his coconspirators "were at least minimally adequate to support a finding that further use of traditional investigative techniques appeared unlikely to succeed." Bailey, 2016 WL 6082239, at *10. In each of the applications DEA Agent Sabatino Smith describes in detail the reasons why conventional investigative techniques have not and will not succeed in achieving the goals of their investigation. His reasons included the inability of informants and undercover officers to provide a complete understanding of the structure of the narcotics organization and its leadership; the limitations of physical surveillance in identifying locations and vehicles used by the organization in the distribution and storage of narcotics; the dangers of physical harm and detection associated with the use of informants and law enforcement surveillance; the incomplete information that might be obtained by the use of search warrants alone; and the impracticalities of using the Grand Jury to investigate the targets of their investigation. Docket # 332-3 at 24-33; Docket

# 332-6 at 28-36; Docket # 332-7 at 43-52; see United States v. House, 636 Fed. App'x 50, 53 (2d Cir. 2016) (investigative obstacles relied on by the government, such as the difficulties with physical surveillance, the inherent limitations posed by a Grand Jury proceeding, and the unreliability of witness interviews justified the use of a wiretap).

Montague also complains that the reasons given by Agent Smith are improper "boilerplate" because they are repeated in each of the wiretap applications. See Docket # 332-2 at 38. I disagree. There are reasons why wiretaps are often the most effective investigative technique in scrutinizing complex narcotic distribution networks and those reasons do not necessarily change from investigation to investigation. Indeed, courts within our Circuit have held that wiretaps are particularly valuable in complex cases that involve large conspiracies and narcotics cases where the telephone is typically used by and among defendants to communicate with each other. See United States v Sang Bin Lee, No. 13-cr-461, 2014 WL 144642, at *2 (S.D.N.Y. Jan. 15, 2014) (collecting cases). Just because Agent Smith repeated the reasons why eavesdropping was needed in wiretap applications involving multiple phones in the same drug distribution conspiracy does not negate the

validity or the legitimacy of his explanation.³ What is required in the application is "'some basis for concluding that less intrusive investigative procedures are not feasible.'" United States v. Howard, 350 Fed. App'x 517, 519, 2009 WL 3425323, at *1 (2d Cir. 2009) (quoting United States Lilla, 699 F.2d 99, 103 (2d Cir. 1983)). The applications for the wiretaps at issue here meet that standard.⁴ See United States v. Terry, 702 F.2d 299, 310 (2d Cir.1983) ("An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every other possible means of investigation has not been exhausted."); United States v. Brome, No. 11-cr-6089, 2012 WL 4490664, at *12 (W.D.N.Y. Sept. 5, 2012) (viewing "affidavits submitted in support of the wiretap applications in a commonsense fashion reveals a large scale narcotics trafficking operation which could not be adequately investigated by traditional methods").

---

³ If the justification to support a wiretap warrant is based on the unique investigative hurdles presented by a particular type of case, it seems logical for law enforcement to rely on that justification in similar types of investigations. It is akin to a criminal defense attorney adopting a list of standard demands for a bill of particulars in a drug conspiracy case or crafting uniform forensic discovery and Brady requests for use in a child pornography case. The fact that the defense attorney repeats similar demands in similar cases does not disprove the legitimacy of the demands.

⁴ Defense counsel has attached to his motion papers an exhibit that contains the wiretap application for the phone number (585)743-2861. See Docket # 332-9, Ex. 6. This phone was apparently utilized by Tahjamin J. Oliver. Beyond attaching the application as an exhibit, defense counsel does not make any legal or factual arguments with respect to this wiretap and the Court declines to conjure up any.

(b) <u>Lack of Probable Cause</u>: Montague argues that the wiretap applications for the targeted phones were not supported by probable cause. In making this argument he repeats his claims that Agent Smith's interpretation of "drug jargon" was erroneous. In my previous Report and Recommendation I addressed and recommended rejecting Montague's probable cause arguments as to the wiretap application and extensions for 585-694-5707. No purpose would be served here by regurgitating my analysis regarding evaluating probable cause for the other challenged wiretap warrants, particularly where each of the warrant applications incorporate by reference Agent Smith's previously submitted affidavits. Suffice it to say that in my view considerable evidence was provided in Agent Smith's affidavits to support probable cause findings for all the phones at issue, including 585-694-6485, 585-424-0756, and 585-978-9263. To the extent that Montague is claiming that it was improper for the issuing judge to rely on information provided by CS-2 in evaluating probable cause for the February 7, 2014 Wiretap Warrant of phone number 585-694-6485 utilized by Antoine Shannon, that argument is without merit. "A recitation that an unnamed informant has previously supplied accurate information is sufficient to justify reliance on the informant's story." <u>United States v. Sultan</u>, 463 F.2d 1066, 1068-69 (2d Cir. 1972). Agent Smith clearly informed the judge that that CS-2 was

cooperating as a result of an arrest, was personally known to Agent Smith, and "proved reliable by providing [Agent Smith] and other members of [law enforcement] with information that was independently corroborated by [Agent Smith] relative to narcotic trafficking." Docket #332-3 at 19.

Similarly, Montague's demand for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) was rejected in my previous Report and Recommendation with respect to 585-694-5707. It bears repeating that the defendant bears the burden of making a substantial showing that any inaccuracies or omissions in the supporting affidavits were the result of Agent Smith's deliberate falsehoods or reckless disregard for the truth. Nothing set forth in the defendant's second set of motion papers causes me to revisit my previously expressed view that the standard for convening a Franks hearing on any of the challenged wiretap warrants has not been met.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that the defendant's second set of motions (Docket # 332) be **denied**.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: February 27, 2017
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

/s/ JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: February 27, 2017
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).