UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

v.

COLIN MONTAGUE, et al.,

                              Defendants.

Case #14-CR-6136-FPG

DECISION AND ORDER

## INTRODUCTION

A second superseding indictment in this case charges Defendant Colin Montague, along with fourteen other individuals and one corporation, with various offenses relating to narcotics trafficking and money laundering. ECF No. 55. As relevant here, Montague has moved to suppress three categories of evidence: (1) evidence obtained from wiretaps of his cell phones; (2) evidence obtained from wiretaps of his co-defendants' cell phones; and (3) evidence obtained from searches of his residence. ECF Nos. 149, 332. In the alternative, Montague requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), on the grounds that the government made material misrepresentations and omissions in its warrant applications. *Id.*

Magistrate Judge Jonathan W. Feldman ("Judge Feldman")[1] issued two Report and Recommendations ("R&Rs"), recommending that Montague's motions be denied. ECF Nos. 257, 375. Montague filed objections, *see* ECF Nos. 334, 405, and the government has responded, *see* ECF Nos. 358, 406. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de novo* review of Judge Feldman's rulings and considered all of the parties' submissions to date. For the reasons stated below, the Court adopts Judge Feldman's R&Rs in their entirety.

---

[1] All pretrial matters were referred to Judge Feldman pursuant to 28 U.S.C. § 636(b).

**DISCUSSION**

The evidence Montague seeks to suppress was seized pursuant to a series of warrants issued by Monroe County Court Judge Victoria M. Argento ("Judge Argento"). Those warrants were issued on the basis of sworn affidavits by Sabbatino Smith, a Special Agent with the federal Drug Enforcement Administration ("Agent Smith").[2]

Montague's motions and objections are prolix and contain a multitude of repetitive arguments.[3] For the purpose of this decision, the Court groups those arguments into three categories. First, Montague argues that the warrant applications at issue here—for wiretaps of his cell phones, for wiretaps of the cell phones of his co-defendants, and for the search[4] of his residence—were not supported by probable cause. Second, Montague argues that the wiretap applications failed to establish that wiretaps were necessary as required by 18 U.S.C. § 2518. Third, Montague argues that misrepresentations and omissions in Agent Smith's applications call for a *Franks* hearing. The Court will address these arguments in turn.

**I. Probable Cause**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). When

---

[2] Montague attached the warrant applications to his second set of motion papers. *See* ECF No. 332. In addition to the Agent Smith applications, Montague attached a wiretap application submitted by Investigator Scott Hill of the Rochester Police Department for a phone number allegedly utilized by Tahjmin J. Oliver. ECF No. 332-9, Ex. 6. However, Montague does not make any legal or factual arguments with respect to this application.

[3] For example, Judge Feldman's first R&R (ECF No. 257) is 16 pages long, yet Montague's motion to "reopen/reconsider" that R&R (ECF No. 332) contains a 75-page "attorney affidavit." Judge Feldman's second R&R (ECF No. 375) is 12 pages long, while Montague's objections to that R&R (ECF No. 405) are 72 pages long.

[4] Montague puts forth arguments regarding search warrant applications dated August 14, 2012 and June 26, 2014. Because the government has indicated that it does not intend to use any evidence seized pursuant to the August 2012 warrant, *see* ECF No. 358, at 6 n.1, only the June 2014 warrant is at issue here.

presented with a warrant application, the issuing magistrate's duty "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. This standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 245 n.13. The relevant inquiry "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Id.*

Further, this Court is mindful of the fact that Judge Argento's determination of probable cause is entitled to great deference. *Id.* at 236. In reviewing that determination, this Court's role is not to conduct a *de novo* review but rather to ensure that Judge Argento had a "substantial basis" for concluding that probable cause existed. *Id.* at 238-39; *see also United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).

Here, Montague argues that Judge Argento's determination of probable cause "was unreasonably based *solely* on the unsupported opinion of [Agent Smith] as to the true meaning of facially innocent language in telephone conversations." ECF No. 405, at 4-5 (emphasis in original). This argument fails for two reasons.

First, although Agent Smith's affidavits do rely heavily on information gleaned from intercepted phone calls and text messages,[5] they also cite information from confidential sources and police surveillance. For example, in his wiretap application regarding a cell phone belonging to co-defendant Antoine Shannon, Agent Smith indicated that he received information from CS-2, a confidential source who is cooperating as a result of an arrest. CS-2 told Agent Smith that Collin Thomas has a cocaine source in Rochester, New York by the name of "Twan" and that Twan sells kilogram quantities of cocaine for between $39,000 and $40,000 per kilogram. Agent

---

[5] These communications were acquired pursuant to wiretaps that are not challenged here.

3

Smith averred that he personally knows CS-2 and that CS-2 has proved reliable by providing Agent Smith and other law enforcement officers with independently-corroborated information regarding narcotics trafficking. Judge Argento's reliance on information provided by CS-2 was proper, and such information provided context to evaluate the meaning of Antoine Shannon's intercepted communications with Collin Thomas. *See United States v. Sultan*, 463 F.2d 1066, 1068-69 (2d Cir. 1972) ("A recitation that an unnamed informant has previously supplied accurate information is sufficient to justify reliance on the informant's story").

Second, while the intercepted communications cited by Agent Smith do not contain explicit, self-evident references to drug trafficking, it was not improper for Judge Argento to consider Agent Smith's interpretations of those communications. As the Second Circuit has recognized, "drug dealers rarely speak openly about their trade." *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) (quoting *United States v. Sisca*, 503 F.2d 1337, 1343 (2d Cir. 1974)); *United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002) ("[D]rug dealers seldom negotiate the terms of their transactions with the same clarity as business persons engaged in legitimate transactions."). Agent Smith averred that based on his training and experience,[6] he is "familiar with the jargon of narcotics and the way narcotics and other illicit drug users and sellers seek to disguise activity relating to drug trafficking."

Of course, the government will have to lay the proper foundation under the Federal Rules of Evidence if it seeks to present Agent Smith's interpretations as evidence at trial. *Garcia*, 291 F.3d at 139-142. But the question now is simply whether Agent Smith's interpretations gave Judge Argento a sufficient basis to conclude that probable cause existed. In making that determination, Judge Argento was entitled to rely on Agent Smith's training and experience. *United States v. Gaskin*, 364 F.3d 438, 456-57 (2d Cir. 2004) ("[C]ourts recognize that experience and training

---

[6] Agent Smith's affidavits describe his background in detail.

may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not.").

Based on this Court's review of the affidavits submitted by Agent Smith—for the wiretaps of Montague's cell phones, for the wiretaps of his co-defendants' cell phones, and for the search of Montague's residence—the Court agrees with Judge Feldman that in each case Judge Argento had a substantial basis for concluding that probable cause existed.

## II. Necessity for Wiretaps

Each application for wiretap authorization must include, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). A judge may approve the application only after determining that such a showing has been made. *Id.* § 2518(3)(c).

This requirement is designed to strike the appropriate balance between the needs of law enforcement officials and the privacy rights of the individual. *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)). Thus, "the question is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement." *Id.* At the same time, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Id.* (quoting *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999)) (internal quotations omitted). In the context of a narcotics conspiracy investigation, the necessity requirement may be satisfied by "an affidavit describing how traditional investigative techniques had failed to provide more than

5

'a limited picture' of [the] narcotics organization." *United States v. Valdez*, No. 90-CR-793, 1991 WL 41590, at *2 (S.D.N.Y. Mar. 19, 1991) (quoting *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990)), aff'd, 952 F.2d 394 (2d Cir. 1991).

Again, it is important to note that this Court's review of Judge Argento's determination is not *de novo*; rather, this Court's role is simply to ensure that the facts set forth in Agent Smith's affidavits were "minimally adequate" to support her conclusion that wiretaps were necessary. *Concepcion*, 579 F.3d at 217 (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)).

After reviewing the wiretap applications at issue here, the Court finds that they were adequate to support the finding that traditional investigative techniques appeared unlikely to succeed. In each of Agent Smith's affidavits, he describes in detail why conventional investigative techniques have not and will not succeed in achieving the particular goals of his investigation. Specifically, Agent Smith describes the inability of informants and undercover officers to provide a complete understanding of the structure of the narcotics organization and its leadership; the limitations of physical surveillance in identifying locations and vehicles used by the organization in the distribution and storage of narcotics; the dangers of physical harm and detection associated with the use of informants and law enforcement surveillance; the incomplete information that might be obtained by the use of search warrants alone; and the impracticalities of using a grand jury to investigate the targets of their investigation.

Montague argues that Agent Smith's affidavits were inadequate because he repeated the same reasons in each of his wiretap applications. The Court disagrees. As Judge Feldman explained, "[t]here are reasons why wiretaps are often the most effective investigative technique in scrutinizing complex narcotic distribution networks and those reasons do not necessarily change from investigation to investigation. . . . Just because Agent Smith repeated the reasons why eavesdropping was needed in wiretap applications involving multiple phones in the same drug

distribution conspiracy does not negate the validity or the legitimacy of his explanation." ECF No. 375, at 8-9. As long as the statutory requirements are met for each wiretap application, as they were in this case, this Court sees no reason why the use of the same or similar language in multiple applications is somehow illegitimate. In reviewing each wiretap application, the issue is simply whether Agent Smith has adequately explained why normal investigative techniques were not feasible—regardless of whether such explanation mirrors similar statements by Agent Smith made in connection with past applications. *United States v. Rivera*, 198 F.R.D. 48, 50 (W.D.N.Y. 1999).

Montague next argues that Agent Smith's affidavits were deficient because he failed to show that other investigative techniques had *actually been tried as to the particular target of each wiretap*. This argument is similarly unavailing. Section 2518 requires that each wiretap application include a statement as to "whether or not other investigative procedures have been tried and failed *or* why they reasonably appear to be unlikely to succeed *if tried* or to be too dangerous." 18 U.S.C. § 2518(1)(c) (emphasis added). Thus, while showing that normal investigative procedures have actually been tried and failed is a perfectly legitimate basis to satisfy section 2518(1)(c), it is not the only way to do so. Here, it was sufficient for Agent Smith to describe why other investigative procedures, *if tried*, would be unlikely to serve the goals of his investigation.

## III. *Franks* Hearing

Lastly, Montague has moved for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* hearings are used by courts to determine whether officers made untruthful statements or omissions in their application for a search warrant. "To be entitled to a *Franks* hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v.*

7

*Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)).

With respect to omissions, it is important to note that "an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation . . . *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003) (emphasis in original)).

Here, Montague has failed to make the threshold showing necessary to warrant a *Franks* hearing because he has not identified any statements or omissions in Agent Smith's affidavits that were false or misleading. Rather, Montague's arguments in this context are essentially a rehash of the arguments discussed above. For example, Montague argues that Agent Smith made false and misleading statements when he interpreted certain intercepted communications as being drug-related and when he gave significance to facially innocent meetings between alleged members of the "Montague Drug Trafficking Organization." But Agent Smith's *opinions* are not statements of fact at all, and Agent Smith's affidavits make that clear by prefacing his interpretations with transcriptions of the conversations at issue and prefacing his opinions regarding meetings with a detailed description of what activities were actually observed by law enforcement. As discussed above, Judge Argento properly relied on Agent Smith's training and experience to make her probable cause determination.

Further, even if Montague could show that any statements or omissions in Agent Smith's affidavits were false or misleading, he has not presented anything that would suggest Agent Smith's affidavits were "designed to mislead" or that he acted with "reckless disregard of the truth." *Rajaratnam*, 719 F.3d at 154 ("[T]he reviewing court must be presented with credible and

probative evidence that the omission of information in a wiretap application was designed to mislead or was made in reckless disregard of whether it would mislead.") (internal quotations and alterations omitted).  Therefore, Judge Feldman correctly denied Montague's request for a *Franks* hearing.

## CONCLUSION

For the reasons stated above, Judge Feldman's R&Rs (ECF Nos. 257, 375) are ADOPTED IN THEIR ENTIRETY.  Montague's motions to suppress (ECF Nos. 149, 332) are DENIED.

IT IS SO ORDERED.

Dated: August 15, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court